In the Matter of VITO ARCURI, Appellant, against JAMES R. MACDUFF, as Commissioner of Motor Vehicles of the State of New York, Respondent.

Third Department, May 11, 1955.

*Saverio M. Flemma* and *John E. Flemma* for appellant.

*Jacob K. Javits, Attorney-General* (*Philip J. Fitzgerald* and *Henry S. Manley* of counsel), for respondent.

HALPERN, J. The Commissioner of Motor Vehicles has revoked the petitioner's chauffeur's license, upon the ground that the petitioner had been convicted of speeding upon three occasions within a period of eighteen months (Vehicle and Traffic Law, § 71, subd. 2, par. [c]). The first conviction took place on September 2, 1953, the second conviction on October 6, 1953, and the third on April 6, 1954. The first conviction was for a violation of section 56 of the Vehicle and Traffic Law; no question is raised as to the validity of that conviction and the propriety of considering it as one of the three convictions under the cited provision of the Vehicle and Traffic Law.

The second conviction was for a violation of a local ordinance forbidding speeding in excess of specified limits. As to this conviction, it is the contention of the petitioner that the Justice of the Peace did not comply with section 335-a of the Code of Criminal Procedure in that he failed to instruct the petitioner in accordance with the provisions of that section that, upon conviction, his license to drive and certificate of registration would be subject to suspension and revocation as prescribed by law. The Magistrate states in an affidavit submitted in support of the petition that he was under the impression at the time that a convic-

tion for a violation of a village ordinance would have no effect upon the operator's license and that he so informed the petitioner. However, the certificate of conviction filed by the Magistrate with the Commissioner of Motor Vehicles gives the answer '' Yes '' to the question in the printed form: '' Upon arraignment, and before accepting any plea, did you give the accused the information required by Code of Criminal Procedure § 335-a? '' In an affidavit submitted by the respondent, the Magistrate states that before he accepted the petitioner's plea of guilty, he advised him that his license might be suspended or revoked upon his conviction. However in a supplemental affidavit procured by the petitioner, he states that '' I am uncertain as to whether I read or informed the said Vito Arcuri of the contents of Section 335-a of the Code of Criminal Procedure and it is my belief that I did not ''.

The third conviction was for excessive speed.in violation of section 56 of the Vehicle and Traffic Law. It is undisputed that the Justice of the Peace read the warning prescribed in section 335-a to the petitioner but it appears that the petitioner's license showed only one prior conviction and, upon the erroneous assumption that a conviction upon the charge before him would only be a second conviction, the Magistrate informed the petitioner that '' a plea of guilty to the charge of speeding would not result in the revocation or suspension '' of the petitioner's license. The petitioner contends that this statement vitiated the effect of the reading of section 335-a and that he pleaded guilty only because he believed that his license would not be affected by the conviction.

After the petitioner received notice from the commissioner that his license had been revoked because of three convictions for speeding, the petitioner brought this proceeding to annul the commissioner's determination and, in his petition and accompanying affidavits, presented his contentions with respect to the alleged failure of the Magistrates to give proper warning upon the occasion of the second and third convictions.

The Special Term dismissed the petition without prejudice and affirmed the order of the commissioner on the ground that the certificates of conviction before the commissioner on their face showed compliance with the statute and that '' he was bound to act as he did and the petitioner's remedy is by way of a *coram nobis* proceeding to set aside said conviction in the court which made it.''

Upon the argument of the appeal in this court, the Attorney-General took the position that the adequacy of the warning upon

the second conviction is immaterial because the petitioner's license could not have been revoked on account of that conviction, and a warning need be given only if the conviction would or might lead to a revocation of the license. This contention does not adequately recognize the effect of the 1953 amendment of section 335-a (L. 1953, ch. 288, eff. July 1, 1953). Under that amendment, a warning in the form prescribed by the statute must be given in every case, at the time of the arraignment " of a resident of this state charged with a violation of the vehicle and traffic law, or other law or ordinance relating to the operation of motor vehicles or motor cycles ".

There had been a great deal of difficulty in the administration of the earlier statute. It had been held, under the section as it read prior to the 1953 amendment, that the warning need not be given in a case in which there was no power to revoke the defendant's license on account of the conviction and in which a revocation could result only upon the occurrence of a subsequent further conviction (*Matter of Johnston* v. *Fletcher*, 86 N. Y. S. 2d 690, affd. 275 App. Div. 802, affd. 300 N. Y. 470; *Matter of De Lynn* v. *Macduff*, 305 N. Y. 501, 506; *Matter of Long* v. *Macduff*, 284 App. Div. 61). It had also been held that, in a case in which warning was required, the Magistrate had to advise the defendant whether revocation would be mandatory or whether it would be merely permissive (*Matter of Eckerson* v. *Macduff*, 284 App. Div. 56, 59). This required the Magistrate to make an inquiry into the defendant's prior record and to determine whether in the light of his record, the revocation was mandatory or permissive.

The purpose of the 1953 amendment was to eliminate these complexities and, on the one hand, to substitute, for the former requirement of individualized advice, a simple uniform warning to be given in the precise form specified in the statute and, on the other hand, to require the new form of warning to be given in every case of motor vehicle violation, whether or not a revocation or suspension might be based upon it. The memorandum submitted by the State Bureau of Motor Vehicles in support of the bill to amend section 335-a, which became chapter 288 of the Laws of 1953, stated: " It seems that substantial justice can be done by providing for a uniform warning to be given in all cases. It would then be the responsibility of the defendant before making a plea to determine what action would follow as a result of any plea he might make and he would then be governed accordingly ". (N. Y. State Legis. Annual, 1953, p. 267.)

The second conviction took place after the effective date of the 1953 amendment and it was therefore the duty of the Magis-

trate to give the statutorily prescribed warning. On the face of the affidavits, it is extremely doubtful whether the warning was given. However, a question of fact of this kind ought not to be decided on affidavits but ought to be decided upon a hearing at which the witnesses are sworn, give their testimony in open court and are subjected to cross-examination. A hearing will therefore have to be held in order to determine whether the statutory warning was given upon the occasion of the second conviction.

With respect to the third conviction, it appears that the warning was given in the manner prescribed by the statute. As has been pointed out, it is no longer necessary for the Magistrate to venture any opinion or to give any advice to the defendant as to whether there is a risk of revocation or suspension in the particular case and as to how serious the risk is. (*Matter of Eckerson* v. *Macduff, supra; People* v. *Mason,* 307 N. Y. 570.)

It may well be, as the petitioner contends, that, if the Magistrate nevertheless undertakes to give advice, he must give it accurately and erroneous advice may, under some circumstances, have the effect of vitiating the statutory warning. However, we need not pass upon that question in this case, since it appears that the opinion expressed by the Magistrate was an accurate one upon the basis of the facts supplied to him by the defendant. The defendant gave the Magistrate his license which showed only one prior conviction for speeding and the Magistrate correctly stated that a second conviction for speeding could not, of itself, result in a revocation or suspension of his license. The defendant was the only one in the courtroom at the time of the arraignment who knew that, if he were convicted, it would be a third and not a second conviction for speeding. The statutory warning had been read to him and he is presumed to have been familiar with the provisions of the Vehicle and Traffic Law and, in the absence of any erroneous or misleading advice by the Magistrate, the defendant must be charged with full responsibility for the consequences of his plea of guilty to the charge.

However, the question of fact raised with respect to the second conviction still requires a hearing.

The Special Term cited in support of its decision dismissing the petition, the recent decision of this court in *Matter of Gross* v. *Macduff* (284 App. Div. 786). The question in that case was whether a written plea of guilty might be accepted instead of an oral plea in open court. The court held that the defendant had waived compliance with the provisions of law which required an oral plea in open court and furthermore that " even if the convic-

tion were vulnerable to direct attack, it may not be collaterally attacked in this civil proceeding '' (p. 789). It was in this connection that the court pointed out that the Commissioner of Motor Vehicles had before him a proper certification of three convictions, all in regular form and that '' The Legislature has neither required nor authorized the commissioner to go behind and beyond the record of conviction '' (p. 789). There was no controversy in that case as to compliance with section 335-a of the code and the quoted sentence was intended to refer to alleged defects in the criminal action or proceeding, other than compliance with section 335-a. Unfortunately, however, a reference to section 335-a was interposed at this point in the opinion and this undoubtedly misled the Special Term. So far as section 335-a is concerned, the statute is explicit in authorizing and requiring the commissioner to look into the matter and satisfy himself that the Magistrate had complied with the statute. There is no provision in the statute for the holding of a hearing by the commissioner but he may make such inquiry as he thinks proper. He may, of course, in the first instance, accept the certification by the Magistrate that the warning had been given as '' presumptive evidence '' of compliance with the statute (Vehicle and Traffic Law, § 70, subd. 11) but he may receive other proof on the subject. If by reason of such other proof, he is satisfied that the Magistrate had '' failed to comply with section three hundred thirty-five-a '', he is not to issue an order of suspension or revocation (Vehicle and Traffic Law, § 71, subd. 6). Furthermore, if the commissioner discovers, after he has issued an order of revocation or suspension, that there had not been compliance with section 335-a, notwithstanding the certification of compliance by the Magistrate, the commissioner is required to rescind the order (Vehicle and Traffic Law, § 71, subd. 6).

Where section 335-a has not been complied with, the defendant, at his option, may attack the validity of the conviction in the criminal proceeding or he may allow the conviction to stand and challenge its use as the basis for revocation or suspension under the Vehicle and Traffic Law.

We are here dealing with a case of a mandatory revocation ordered by the commissioner, pursuant to the statute, without a hearing (Vehicle and Traffic Law, § 71, subd. 2). The statute does not require the commissioner to hold any hearing or to give any notice or opportunity to be heard to the defendant. The reasonableness of the action taken by the commissioner is therefore reviewable by a proceeding under article 78 in the nature of mandamus, in which the ultimate question to be decided is

whether the action of the commissioner was arbitrary or capricious. Where the determination of this question requires the resolution of underlying issues of fact, a trial of the factual issues must be held at Special Term (*Matter of Canada Dry Bottling Co.* v. *O'Connell,* 284 App. Div. 370, affd. 308 N. Y. 778; *Matter of Wignall* v. *Fletcher,* 303 N. Y. 435, 440; *Matter of Newbrand* v. *City of Yonkers,* 285 N. Y. 164, 174–176; 1 Benjamin on Administrative Adjudication in the State of New York, pp. 354–356; Jaffe on Administrative Law, pp. 502, 503).

As has been pointed out above, there is in this case a question of fact as to compliance with section 335-a upon the occasion of the petitioner's second conviction and the proceeding must therefore be remitted to the Special Term for a trial of that issue.

The order appealed from should therefore be reversed and the matter remitted to Special Term, without costs.

FOSTER, P. J., COON, IMRIE and ZELLER, JJ., concur.

Order reversed, and the matter remitted to the Special Term, without costs. [See *post,* p. 976; 1 App. Div. 2d 733.]